CLERK'S OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED

MAY 09 2007

JOHN F. CORCORAN, CLERK
BY: [signature]
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| JAMES A. BROWN, JR. | ) | |
| Plaintiff, | ) | Civil Action No. 7:07cv00144 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| GENE JOHNSON, | ) | By: Hon. Jackson L. Kiser |
| Defendant. | ) | Senior United States District Judge |

James A. Brown, Jr., a Virginia inmate proceeding pro se, brings this action as a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. However, upon review of Brown's claims, I find that this case is more properly brought as a civil rights action under 42 U.S.C. § 1983. Brown argues that his Fourteenth Amendment rights to due process and equal protection were violated while he was incarcerated at Augusta Correctional Center. Having reviewed Brown's submissions, I conclude that he has failed to state a claim upon which relief may be granted. Therefore, I will dismiss his complaint pursuant to 28 U.S.C. § 1915A(b)(1).[1]

## I.

In a Disciplinary Offense Report prepared on April 16, 2006, a female officer alleges that while Brown was in the shower earlier that day, "[he] looked directly at [the female officer]" and "expos[ed] himself while masturbating." Later that day, Brown was offered five days isolation as a penalty for the offense of 210B - Indecent Exposure. Brown declined the offer and opted for a disciplinary hearing. On April 28, 2006, a disciplinary hearing was held and Brown was found guilty of 210B - Indecent Exposure by the Disciplinary Hearing Officer.

Brown alleges that being found guilty of this offense increased his classification level from

---

[1]This statute provides that the court shall dismiss a complaint as soon as practicable if the court determines that it is frivolous, malicious, or fails state a claim upon which relief may be granted. 28 U.S.C. § 1915A(b)(1).

30 points to 40 points. This extra ten points allegedly resulted in Brown being immediately transferred to Sussex II State Prison, a Security Level 4 institution. Brown does not allege that the increase in his classification level or his transfer in any way affected the length of his sentence. In his complaint, Brown seeks expungement of the indecent exposure charge and the ten extra classification points from his record. For reasons set forth below, I find that Brown has failed to state a clam upon which relief may be granted.

## II.

Brown states the following ground for relief:

> "The [plaintiff's] [c]onstitutional rights under the Fourteenth Amendment for due process and equal protection of law were violated when the disciplinary hearing officer . . . . of Augusta Correctional Center elected to pursue a disciplinary hearing without ordering the charging officer to fill out the responsive questionaire[sic] form required by DOP policy Code 861(B)-8.9 for a charge of Indecent [E]xposure offense code 210B."

Although acknowledging that DOP policy does not require the reporting officer to be present at his disciplinary hearing, Brown argues that the female officer's failure to respond to the Reporting Officer Response Form was a violation both DOP policy and the Sixth Amendment.[2] Also, in a disciplinary appeal form submitted along with his complaint, Brown argues that it was against DOP policy for him to have been found guilty of a disciplinary infraction based solely on the female officer's report. According to Brown, the alleged deficiencies in his disciplinary proceeding violated his Fourteenth Amendment rights to due process and equal protection. For reasons set forth below, I find that Brown has stated neither a due process claim nor an equal protection claim.

---

[2]It should be noted that, in grievance papers submitted along with his complaint, Brown admits to waiving the requirement of having the female officer complete the Reporting Officer Response Form.

2

## A. Due Process Claim

In order to prevail on a due process claim, "inmates must first demonstrate that they were deprived of 'life, liberty, or property' by governmental action." Beverati v. Smith, 120 F.3d 500, 502 (4th Cir. 1997). A prison disciplinary action implicates a liberty interest requiring due process safeguards when the punishment imposed inflicts an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995). The determination of whether such an atypical and significant hardship exists is a question of law. Beverati, 120 F.3d at 503.

The issue here is whether or not Brown had a liberty interest in not being transferred to Sussex II State Prison.[3] Brown argues that he did have such a liberty interest and, therefore, was entitled to procedural due process prior to his transfer to Sussex II State Prison. However, this argument fails because an inmate has no constitutional right to be housed in any particular prison,

---

[3]Brown's due process argument operates under the assumption that DOP policies create liberty interests. This assumption is misplaced. "Prior to the decision of the Supreme Court in Sandin, the analysis of whether a prisoner was deprived of a liberty interest focused not on the nature of the deprivation experienced by the prisoner, but on the language of the applicable prison regulations and whether such language was 'mandatory.'" Beverati, 120 F.3d at 503 n. 3. In Sandin, 515 U.S. at 482-483, the Supreme Court criticized this methodology, because it created a disincentive for states to promulgate procedures for prison management, and it caused federal courts to become overly involved in the day-to-day management of prisons. These concerns led the Supreme Court to reject the mandatory language method previously adopted in Hewitt v. Helms, 459 U.S. 460 (1983), and instead focus on the nature of the deprivation experienced by the prisoner. See Sandin, 515 U.S. at 483-484; Beverati, 120 F.3d at 503, n.3. As the Supreme Court recently noted, it is now "clear," after Sandin, "that the touchstone of the inquiry into the existence of a protected, state-created liberty interest in avoiding restrictive conditions of confinement is not the language of regulations regarding those conditions but the nature of those conditions themselves 'in relation to the ordinary incidents of prison life.'" Wilkinson v. Austin, 545 U.S. 209, 223 (2005) (quoting Sandin, 515 U.S. at 484).

Thus, in light of the above-cited case law, I need not scrutinize the DOP policies that Brown cites in his complaint and supporting paperwork. The relevant inquiry, rather, is whether or not Brown had a liberty interest in not being transferred to Sussex II State Prison.

Brown also appears to argue that he was entitled to due process prior to having his classification level increased from 30 point to 40 points. However, the Constitution does not vest in an inmate a liberty interest in retaining or receiving a certain custody or classification status. Slezak v. Evatt, 21 F.3d 590, 594 (4th Cir. 1994), cert. denied, 513 U.S. 889 (1994). Therefore, Brown was not entitled to due process prior to having his classification level increased.

3

and prison officials have broad discretion to determine the facility at which an inmate is housed. Sandin v. Conner, 515 U.S. 472, 484 (1995) (holding that protected liberty interests are generally limited to freedom from restraint which imposes atypical and significant hardship on inmate in relation to ordinary incidents of prison life); Meachum v. Fano, 427 U.S. 215, 224 (1976) (holding that a valid conviction "empower[s] the State to confine [an inmate] in *any* of its prisons") (emphasis in original); Montayne v. Haymes, 427 U.S. 236, 242 (1976) (holding that a mere transfer from one facility to another does not implicate the Due Process Clause, regardless of whether the transfer is the result of the inmate's misbehavior or is punitive in nature); but see, Wilkinson v. Austin, 545 U.S. 209, 224 (2005) (holding that, despite general rule that an interprison transfer does not implicate the Due Process Clause, transfer to a so-called "Supermax" facility at which prisoner would experience exceptionally more onerous conditions did implicate the Due Process Clause). Therefore, because Brown has not been transferred to a "Supermax" facility, and he does not have a liberty interest in being incarcerated in any particular facility, I find that he has not stated a due process claim.

B. Equal Protection Claim

Brown also alleges an equal protection violation by the defendant. "The Equal Protection Clause of the Fourteenth Amendment 'is essentially a direction that all persons similarly situated should be treated alike.'" Lawrence v. Texas, 539 U.S. 558, 579 (2003) (O'Connor, J., concurring) (quoting Cleburne v. Cleburne Living Center, Inc., 473 U.S. 432, 439(1985)). Brown's equal protection argument is as follows: "[Plaintiff] . . . asserts that the United States Constitution protects prisoner's[sic] as well as people out in society from the abuse of a[n] adversarial position . . . ." When viewing this contention in conjunction with the immediately preceding paragraph in Brown's

4

complaint, it appears that the 'adversarial position' of which Brown complains is an alleged violation of his Sixth Amendment right to confront and cross-examine his accuser.

Brown essentially argues that he has not received the same Sixth Amendment right to confront one's accusers that a defendant in a criminal prosecution would receive. Brown cites Lilly v. Commonwealth, 258 Va. 548 (Va. 1999), a Virginia criminal case which reached the United States Supreme Court on a Sixth Amendment confrontation issue. See Lilly v. Va., 527 U.S. 116 (1999). Brown argues that he "suffers the exact same unconstitutional conviction" as the defendant in Lily. Of course, this equal protection argument fails because Brown is not similarly situated to a defendant in criminal prosecution. In Wolf v McDonell, 418 U.S. 539, 556 (1974), the Supreme Court noted that "the fact that prisoners retain rights under the Due Process Clause in no way implies that these rights are not subject to restrictions imposed by the nature of the regime to which they have been lawfully committed." The Court further noted that "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." Id. In Brown v. Braxton, 373 F.3d 501, 504 (4th Cir. 2004), the Fourth Circuit clarified Wolf and noted that "inmates are not entitled to confront the witnesses against them . . . ." (citing Wolf, 418 U.S. 539 at 567-70; Baxter v. Palmigiano, 425 U.S. 308, 315-22 (1976)). Thus, because Brown does not have the same rights as a defendant in a criminal prosecution, he is not similarly situated to a defendant in a criminal prosecution and, therefore, this equal protection argument must fail.

### III.

For the above state reasons, I find that Brown has not presented any claims that constitute a violation of his constitutional rights. Therefore, I dismiss the complaint for failure to state a claim,

5

pursuant to 28 U.S.C. § 1915A(b)(1). Accordingly, plaintiff's complaint shall be and hereby is **DISMISSED**.

The Clerk of the Court is directed to send a certified copy of this Memorandum Opinion and accompanying Order to the plaintiff.

ENTER: This 9th day of May, 2007

Senior United States District Judge

6